**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **DEAN FREDRICK MALZAHN,** | § | |
| **Reg. No. 47223-298,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-18-CV-136-KC** |
| | § | |
| **S. NICKLIN, Warden,** | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Dean Fredrick Malzahn is a federal prisoner at the La Tuna Federal Correctional Institution in Anthony, Texas, with a projected release date of August 12, 2019.[1] He petitions the Court under 28 U.S.C. § 2241 to intervene in his behalf and order Respondent S. Nicklin to grant him "additional time in the halfway house for a fighting chance at being a productive member of society." Pet'r's Pet. at 2, ECF No. 1. After reviewing Malzahn's petition, the Court finds it appears from its face that his claims are unexhausted and, in the alternative, that he is not entitled to § 2241 relief. Accordingly, the Court will dismiss Malzahn's petition. 28 U.S.C. § 2243 (2012).

### FILING FEE

Malzahn failed to pay the $5.00 filing fee or submit an application to proceed in forma pauperis. The Court will, however, permit Malzahn to proceed without prepaying costs or fees because time is of the essence.

---

[1] Anthony is located in El Paso County, Texas, which is within the Western District of Texas. 28 U.S.C. § 124(d)(3) (2012).

## APPLICABLE LAW

A writ of habeas corpus under 28 U.S.C. § 2241 provides the proper procedural vehicle in which to raise an attack on "the manner in which a sentence is executed." *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000). However, "[h]abeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.'" *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c) (2012). A court must order a respondent to show cause why a petition pursuant to § 2241 should not be granted "unless it appears from the [petition] that the [petitioner] or person detained is not entitled thereto." 28 U.S.C. § 2243 (2012).

## ANALYSIS

### A. Exhaustion

An initial issue a court must address when screening a § 2241 petition is whether the petitioner has exhausted his administrative remedies. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). A petitioner seeking habeas relief must first exhaust all administrative remedies which might provide appropriate relief. *Id.*; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993).

The Bureau of Prisons ("BOP") has established a multi-tiered administrative remedy program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, the inmate must present his particular complaint to the prison staff and attempt to resolve the issue in an informal manner. *Id.* §

542.13(a).   If the complaint cannot be resolved informally, the inmate must file a formal written administrative remedy request on a BP-9 form with the prison warden.   *Id*. § 542.14.   The warden has twenty days to respond, which may be extended by an additional twenty days.   *Id*. § 542.18.   Any adverse decision by the warden must be appealed to the appropriate regional director by filing a BP-10 form.   *Id*. § 542.15(a).   The regional director has thirty days to issue a response, which may be extended by an additional thirty days.   The final step in the administrative review process is an appeal to the Office of General Counsel on a BP-11 form.   *Id*.   The General Counsel has forty days to issue a response.   *Id.* § 542.18.   If an inmate does not receive a response within the time allotted for a reply, he may consider the absence of a response a denial at that level and proceed to the next level.   *Id*.   An inmate may seek relief in federal court only after he has exhausted all levels of the administrative review process.   *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (internal citations omitted).   Exceptions may be made only in "extraordinary circumstances," which the petitioner bears the burden to establish.   *Id.*

Malzahn claims he discussed his placement in a halfway house with his counselor.   Pet'r's Pet. at 2.   He further claims he submitted a formal written administrative remedy request on a BP-9 form to his warden, but he is still waiting for a response.   *Id*.   He fails to identify any extraordinary circumstances which would establish the futility of exhaustion in his case.

The Court accordingly finds that Malzahn has not exhausted and dismissal is warranted on that basis alone. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition arguing violation of the Second Chance Act for failure to exhaust administrative remedies). But even if Malzahn had exhausted, he would still not be entitled to § 2241 relief.

**B. Authority of the Bureau of Prisons to Place Inmates**

The Court notes that two statutes govern the discretion of the Bureau of Prison's ("BOP") to place an inmate in a particular facility: 18 U.S.C. § 3621(b), which addresses the imprisonment of a convicted person, and the Second Chance Act of 2007, Pub. L. 110–199, 122 Stat. 692 (Apr. 9, 2008), which amends 18 U.S.C. § 3624(c) to authorize funding for rehabilitative services.

Section 3621(b) grants the BOP the authority and discretion to designate the place of confinement. Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b) (2012). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any pertinent policy statement issued by the Sentencing Commission[.]" *Id.*

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system . . . an increasing special obligation to help federal

-4-

offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism. *Id.* The Act also addresses placement in a community corrections facility such as a halfway house. 18 U.S.C. § 3624(c) (2012). It modifies 18 U.S.C. § 3624(c) to grant BOP staff the discretion to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months as permitted by the prior law. *Id.* It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6).

The BOP adopted regulations implementing the Second Chance Act, codified at 28 C.F.R. §§ 570.20–.22, effective October 21, 2008. Both the statute and the regulations instruct the BOP to make a determination on the amount of time a prisoner should spend in residential reentry center "on an individual basis." *Id.*; 28 C.F.R. § 570.22.

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).[2]

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'" *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir.2003) ("Since discretionary relief is a privilege . . ., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process.'") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

Thus, after reviewing Malzahn's petition and the applicable statutes, the Court finds that

---

[2] The statutory language in 18 U.S.C. § 4082(b) was re-codified through Pub. L. 94-473, Title 2 II, § 212(a)(2), Oct. 12, 1984, and is currently found at 18 U.S.C. § 3621(b).

the BOP has exclusive authority and discretion to determine if and when to assign an inmate to a halfway house. A recommendation from the Court would likely have little or no influence on the BOP's discretionary decision to place an inmate in a community corrections facility.

## CONCLUSIONS AND ORDERS

Accordingly, the Court finds that Malzahn has not only failed to exhaust his administrative remedies, but also has no constitutional or statutory right to placement in a halfway house. The Court accordingly concludes it appears from the face of Malzahn's petition that he is not entitled to § 2241 relief.

The Court, therefore, enters the following orders:

**IT IS ORDERED** that Dean Fredrick Malzahn is **GRANTED** leave to proceed in forma pauperis.

**IT IS FURTHER ORDERED** that Dean Fredrick Malzahn's "Petition for a Writ of Habeas Corpus" and his civil cause are **DISMISSED WITHOUT PREJUDICE.**

**IT IS ALSO ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED.**

**SIGNED this 14th day of May, 2018.**

**KATHLEEN CARDONE**
**UNITED STATES DISTRICT JUDGE**